ERNEST VICTOR JOHNSON, JR., PATTIE RUTH JOHNSON FAULKNER, JOSH H. GROCE, ATTORNEY FOR STANDARD ACCIDENT INSURANCE COMPANY, AND STANDARD ACCIDENT INSURANCE COMPANY, v. P. L. SALSBURY, SR.

(Filed 11 October, 1950.)

**1. Pleadings § 15—**

A demurrer tests the sufficiency of the complaint to state a cause of action, admitting for this purpose the truth of its allegations of fact.

**2. Wills § 31—**

A will should not be construed so as to nullify the instrument or any part of it, and therefore the courts will adopt that construction which will uphold the will in all its parts if such course is consistent with established rules of law and the intention of testator.

**3. Same: Wills § 33d—Bequest to grandchildren with direction that son be appointed guardian with power of sale held bequest to son as trustee.**

Testatrix bequeathed certain property to her grandchildren with subsequent provisions that it was her will and desire that her son be appointed their guardian and that the guardian should hold and manage the property for the grandchildren with power to sell, convey or exchange the securities. *Held:* Since testatrix could not appoint a testamentary guardian for her grandchildren, G.S. 33-2, the provisions will be interpreted as bequeathing the property to testatrix' son as trustee for testatrix' grandchildren, in order that each provision of the instrument be given effect consistent with testatrix' intention.

**4. Courts § 14: Trusts § 1—**

The validity of a testamentary trust of personalty is governed by the law of the state of testator's domicile at the time of his death.

**5. Courts § 14: Trusts § 14a—**

A testamentary trust in personalty will be administered in accordance with the laws of the state of the testator's domicile at the time of his death unless the will affirmatively show an intention that the trust be administered elsewhere, even though the trustee and the beneficiary be residents of another state.

**6. Trusts § 14a—**

A trustee can properly sell trust property if power of sale is conferred upon him by the instrument creating the trust.

**7. Same—**

The execution of a power will be attributed to a valid authority even though the trustee profess to act under an authority which is defective, and therefore where the trust instrument gives the trustee valid power of sale, the trustee's sale of the trust property will be attributed to this authority, rendering it unnecessary to determine the validity of a decree authorizing the trustee to sell.

**8. Evidence § 3—**

Our courts will take judicial notice of the laws of another state, and therefore will judicially know the jurisdiction of a court of another state which has rendered a decree involved in the litigation here.   G.S. 8-4.

**9. Courts § 14:  Trusts § 20b—**

A decree entered in another state by a court therein having general equitable jurisdiction, terminating a trust and directing the trustee to divide the property among the beneficiaries, is effective here when the trustees and beneficiaries were parties to the suit in such other court, even though the trust is created by a North Carolina instrument, since equity acts *in personam* and its decree is binding upon all parties in interest.

APPEAL by plaintiffs from *Carr, J.,* at March Term, 1950, of HALIFAX.

This is an appeal from a decision upon a demurrer, and necessitates an analysis of the complaint.

The complaint covers 30 pages of the record.   Stripped of nonfactual averments, it alleges these things:

1. Pattie T. Johnson, a resident of Halifax County, North Carolina, died testate 17 October, 1931, leaving two sons and a daughter, to wit, E. V. Johnson, Estelle J. Salsbury, and Hugh Johnson, all of whom were married and had minor children.   E. V. Johnson had four children living at the death of his mother, and no other children were born to him thereafter.   These children were as follows: (a) Estelle Johnson, who subsequently married George E. Bean and is sometimes designated herein as Estelle Johnson Bean or Estelle J. Bean; (b) Richard M. Johnson; (c) Ernest Victor Johnson, Jr., one of the plaintiffs, who is sometimes referred to herein as E. V. Johnson, Jr.; and (d) Pattie Ruth Johnson, one of the plaintiffs, who subsequently married one Faulkner and is sometimes designated herein as Pattie May Johnson or as Pattie Ruth Johnson Faulkner.   The last two named children were infants of tender years at the death of Pattie T. Johnson.

2. Shortly after her death the will of Pattie T. Johnson was admitted to probate in the Superior Court of Halifax County, North Carolina, and P. L. Salsbury qualified as administrator with the will annexed.

3. Item seven of the will of Pattie T. Johnson was as follows: "I give, devise, and bequeath one-third of all the rest and residue of my estate, both real and personal wheresoever situate, to Estelle Johnson, Richard M. Johnson, E. V. Johnson, Jr., and Pattie May Johnson, children of my beloved son, E. V. Johnson, share and share alike; and if prior or subsequent to my death there should be born to E. V. Johnson and his wife, a child or other children, then such child or children hereafter born shall receive a child's part each of this one-third of the residue of my estate, just as if said child or children were now living and named in this

will, and this devise shall be equally divided among the children of E. V. Johnson."

4. Item ten of the will of Pattie T. Johnson was as follows: "It is my will and desire that E. V. Johnson, my beloved son, shall be appointed guardian of Estelle Johnson, Richard M. Johnson, E. V. Johnson, Jr., and Pattie May Johnson, and any other child or children that are born to E. V. Johnson and wife, should I die before they arrive at the age of twenty-one years, and the said E. V. Johnson is to act as guardian for said children in handling whatever estate I leave to them without bond." Items eleven and twelve contained similar provisions relative to Estelle J. Salsbury and Hugh Johnson and their respective children.

5. Item thirteen of the will of Pattie T. Johnson was as follows: "I hereby give to E. V. Johnson, Estelle J. Salsbury and Hugh Johnson, Guardians above named, power and authority, over any and all property coming into their hands as Guardians, to hold, manage, exchange, convert, sell, convey, lease, improve, invest, reinvest and keep the same invested in such stocks, bonds or other securities and properties as shall, from time to time, appear to them for the best interest of their respective wards, and to exercise any of the powers hereinbefore vested in them as Guardians without an order of Court."

6. On 3 September, 1934, E. V. Johnson, who resided with his immediate family in Brown County, Texas, qualified as guardian of the estate of his minor children, Ernest Victor Johnson, Jr., and Pattie Ruth Johnson before the County Court of Brown County, Texas. The plaintiff, Standard Accident Insurance Company, a Michigan corporation, was surety on his guardianship bonds.

7. On 15 October, 1934, P. L. Salsbury, Administrator with the will annexed of Pattie T. Johnson, filed his final account for settlement and brought a special proceeding in the Superior Court of Halifax County, North Carolina, in term time against all the devisees and legatees named in the will of Pattie T. Johnson under the provisions of the statute embodied in G.S. 28-165, setting forth the facts and praying for a final account and settlement of the estate committed to his charge. Final judgment was rendered in such proceeding by his Honor, William A. Devin, the presiding judge, at the March Term, 1935, of the Superior Court of Halifax County, North Carolina, directing the Administrator with the will annexed to transfer the share in the residuary estate described in item seven of the will "to E. V. Johnson, as Guardian and trustee without bond under the last will and testament of Pattie T. Johnson with all the rights and powers set forth in Items 10 and 13 of said will, for the use and benefit of Estelle J. Bean, Richard M. Johnson, E. V. Johnson, Jr., and Pattie Ruth Johnson, and any other child, or children that may be hereafter born to said E. V. Johnson."

8. The share of the residuary estate described in item seven of the will of Pattie T. Johnson included 134 shares of the common stock of the Carolina Telephone and Telegraph Company, a corporation doing business at Tarboro, North Carolina. On 4 April, 1935, P. L. Salsbury, as Administrator with the will annexed of Pattie T. Johnson, caused this common stock to be transferred on the books of the corporation to "E. V. Johnson, guardian and trustee under Item 10 of the last will and testament of Pattie T. Johnson, for the use and benefit of Estelle Johnson Bean, Richard M. Johnson, E. V. Johnson, Jr., Pattie Ruth Johnson, and any other child or children that may be hereafter born to said E. V. Johnson." He did not deliver the new stock certificates to E. V. Johnson, but deposited them with the Clerk of the Superior Court of Halifax County, North Carolina.

9. On or about 20 July, 1935, E. V. Johnson filed a petition before the Clerk of the Superior Court of Halifax County, North Carolina, under the provisions of the statutes codified as article 7 of chapter 33 of the General Statutes, showing duly authenticated copies of his appointment as guardian of the estates of his minor children, Ernest Victor Johnson, Jr., and Pattie Ruth Johnson, by the County Court of Brown County, Texas, and of his bond given such court as such guardian, and praying for the removal to Brown County, Texas, of the estates of his minor children in the 134 shares of common stock of the Carolina Telephone and Telegraph Company represented by the stock certificates deposited with the Clerk by the Administrator with the will annexed. The Clerk of the Superior Court of Halifax County, North Carolina, thereupon "ordered that the 134 shares of the common stock of the Carolina Telephone and Telegraph Company . . . now being held in this office be forwarded to E. V. Johnson, guardian and trustee, Item 10 of the last will and testament of Pattie T. Johnson" in Brown County, Texas. Shortly thereafter the certificates representing the 134 shares of stock were delivered to E. V. Johnson by mail.

10. On 29 May, 1936, a decree was entered in Case No. 7,154 in the District Court of Brown County, Texas, under which 68 of the shares of stock of the Carolina Telephone and Telegraph Company were "partitioned by the Court," and the remaining 66 shares "were set aside and vested in" E. V. Johnson "as trustee for the use and benefit of Estelle J. Bean, Richard M. Johnson, E. V. Johnson, Jr., and Pattie Ruth Johnson, and any other child or children that may be born to the said E. V. Johnson until the further order of the court." The "said shares were set aside to him as such trustee by reason of a provision in the will of Pattie T. Johnson."

11. On 2 November, 1939, "E. V. Johnson, guardian of the estates of E. V. Johnson, Jr., and Pattie Ruth Johnson, minors, and trustee for the

use and benefit of Estelle J. Bean, Richard M. Johnson, E. V. Johnson, Jr., and Pattie Ruth Johnson and any other child or children that may hereafter be born to the said E. V. Johnson," brought an action against Estelle J. Bean, and her husband, George E. Bean, and Richard M. Johnson in the District Court of Brown County, Texas, for the avowed purpose of obtaining a decree terminating the "trusteeship" and partitioning the remaining 66 shares of stock of the Carolina Telephone and Telegraph Company among Estelle J. Bean, Richard M. Johnson, E. V. Johnson, Jr., and Pattie Ruth Johnson in equal proportions. His complaint alleged that he held the 66 shares of stock "as trustee for the use and benefit of Estelle J. Bean, Richard M. Johnson, E. V. Johnson, Jr., and Pattie Ruth Johnson, and any other child or children that may be born to the said E. V. Johnson" under a provision in the will of Pattie T. Johnson, and under the decree entered by the District Court of Brown County, Texas, on 29 May, 1936, in case No. 7,154; that it had become a physical impossibility for any other child or children to be born to him or his wife; that in consequence there was no necessity for maintaining the trusteeship; and that his four children were entitled to the remaining stock in equal proportions. On the trial, the District Court of Brown County, Texas, made specific findings of fact sustaining the allegations of the complaint, and entered a judgment terminating the trust and ordering E. V. Johnson to transfer 16½ shares of the stock to each of his four children, or, in the alternative, to sell the stock and divide the proceeds equally among such children. The judgment expressly provided that "E. V. Johnson, as guardian of the estate of E. V. Johnson, Jr., and Pattie Ruth Johnson, retain in his possession, as such guardian, the shares or money herein allotted . . . to said minors."

12. On 11 December, 1939, E. V. Johnson filed with the Carolina Telephone and Telegraph Company certified copies of the complaint and decree mentioned in the preceding paragraph. At the same time he sold, and caused to be transferred to the defendant on the books of the company 30 shares of the 66 shares of stock held by him as "guardian and trustee under Item 10 of the last will and testament of Pattie T. Johnson, for the use and benefit of Estelle Johnson Bean, Richard M. Johnson, E. V. Johnson, Jr., Pattie Ruth Johnson, and any other child or children that may be hereafter born to said E. V. Johnson." On 27 May, 1940, E. V. Johnson transferred 18 of the 36 shares still retained by him in equal proportions to Estelle J. Bean and Richard M. Johnson, and on 3 December, 1940, he sold and caused to be transferred to the defendant on the books of the issuing corporation the remaining 18 shares.

13. When the defendant purchased the 48 shares of stock from E. V. Johnson, he knew that the plaintiffs, Ernest Victor Johnson, Jr., and Pattie Ruth Johnson Faulkner, were infants, and that the stock was

listed in the records of the company and the covering certificates as set out in the next preceding paragraph.

14. E. V. Johnson died in 1942 in a state of complete insolvency without having accounted to the court, or to the plaintiffs, Ernest Victor Johnson, Jr., and Pattie Ruth Johnson Faulkner, for any of the proceeds of the 48 shares of stock.

15. The plaintiffs, Ernest Victor Johnson, Jr., and Pattie Ruth Johnson Faulkner, attained their majorities subsequent to all the events set out above, discovered the loss which they had suffered, and repudiated the sale of the 48 shares of stock to the defendant. They thereupon made claim against the plaintiff, Standard Accident Insurance Company, as surety on the guardianship bonds given by E. V. Johnson, and on or about 14 December, 1946, such plaintiff settled the claim by paying $7,500.00 to them. They thereupon released the Standard Accident Insurance Company from any further liability to them on the guardianship bonds, and assigned to the plaintiff Josh H. Groce, attorney for the Standard Accident Insurance Company, a specified interest in all causes of action which they might have against the defendant on account of the handling of their "affairs by E. V. Johnson . . . as guardian, or in any other purported capacity." Shortly thereafter this action was brought. The stock was worth $200.00 per share at the time of its sale, and a like sum when the action was begun.

The plaintiffs concluded as a matter of law on the basis of the foregoing allegations of fact that the 48 shares of stock were sold to defendant by E. V. Johnson without lawful authority, and prayed judgment as follows:

1. That defendant be required to deliver to plaintiffs 33 shares of the common stock of Carolina Telephone and Telegraph Company, or

2. That in the alternative plaintiffs have and recover of defendant the value of said 33 shares of stock to be determined by the court.

3. That plaintiffs have and recover of defendant all dividends which have accrued on said 33 shares of stock since its transfer to defendant.

The defendant demurred to the complaint on the ground that it does not state facts sufficient to constitute a cause of action. G.S. 1-127. The court entered a judgment sustaining the demurrer, and the plaintiffs excepted and appealed, assigning such judgment as error.

*A. J. Fletcher and F. T. Dupree, Jr., for the plaintiffs, appellants.*
*Leggett & Fountain for the defendant, appellee.*

ERVIN, J. The demurrer admits the facts alleged in the complaint to be true, and asserts as a legal proposition that the admitted facts do not reveal the commission of an actionable wrong by defendant against plain-

tiffs. It is self-evident that the defendant has done the plaintiffs no actionable injury by buying the stock if E. V. Johnson had authority to sell it to him. For this reason, the appeal presents this single query: When the factual averments of the complaint are accepted as true, do they show that E. V. Johnson had no lawful power to sell the stock to the defendant?

The plaintiffs contend that this question must be answered in the affirmative. They assert that the will of the testatrix did not vest any power of sale in E. V. Johnson for alternative reasons. They say primarily that this is so because items ten and thirteen were at most an unlawful attempt by a grandparent to appoint a testamentary guardian for grandchildren. They assert secondarily that item ten was the expression of a mere hope or request of the testatrix that E. V. Johnson would qualify as guardian for his children before a proper court in the event she died before such children arrived at the age of twenty-one years, and that such court would permit him to exercise the broad powers enumerated in item thirteen in his capacity as such guardian. They conclude that E. V. Johnson had no authority whatever to handle the stock of the plaintiffs, Ernest Victor Johnson, Jr., and Pattie Ruth Johnson Faulkner, except that derived from his appointment as guardian of their estate by the county court of Brown County, Texas; that in consequence he had no power to sell the shares of stock in controversy unless he was authorized so to do by a court of competent jurisdiction; and that the decree of the District Court of Brown County, Texas, purporting to sanction a sale of such stock, was void because the District Court had no power under Texas law to make such decree.

It appears, therefore, that the first task confronting us on the appeal is that of interpreting the will of the testatrix. In construing a will, courts do not search for a meaning which will nullify the instrument or any part of it. The converse is true. They adopt a construction which will uphold the will in all its parts, if such course is consistent with established rules of law and the intention of the testator. *Tillett v. Nixon*, 180 N.C. 195, 104 S.E. 352.

The statute codified as G.S. 33-2 does not empower a grandparent to appoint a testamentary guardian for a grandchild. *Williamson v. Jordan*, 45 N.C. 46. For this reason, items ten and thirteen of the will of Pattie T. Johnson are not to be interpreted as an ineffectual attempt by the testatrix to appoint a testamentary guardian for her grandchildren if her words are reasonably susceptible of a construction which will give effect to the provisions of the items. Moreover, item ten is not to be interpreted to express a mere hope or request on the part of the testatrix that her son, E. V. Johnson, should qualify as guardian of her grandchildren before an appropriate court, unless her language will admit of no

other reasonable construction. This is true because such interpretation would render item thirteen wholly meaningless.

A technical draftsman would undoubtedly have used apter words to express the purpose of the testatrix. Nevertheless, we think that the language employed in items seven, ten and thirteen can be reasonably interpreted to express an intention on the part of the testatrix to invest her son, E. V. Johnson, with the legal title to one-third of her residuary estate in trust for the use and benefit of his children. Manifestly, this construction must be adopted, for it gives effect to every word and phrase of the testatrix without offending any rule of law. Besides, it is sanctioned by a pertinent precedent. *Camp v. Pittman,* 90 N.C. 615.

The validity of a testamentary trust of personalty is governed by the law of the state of the testator's domicile at the time of his death. *Cross v. United States Trust Co.,* 131 N.Y. 330, 30 N.E. 125, 15 L.R.A. 606, 27 Am. St. Rep. 597; 15 C.J.S., Conflict of Laws, section 18. Furthermore, a trust of personal property created by will is administered by the trustee according to the law of the state of the testator's domicile at the time of his death unless the will affirmatively shows an intention that the trust should be administered elsewhere. Am. Law Inst. Restatement, Conflict of Laws, section 298. See, also, in this connection: *Hoglan v. Moore,* 219 Ala. 497, 122 So. 824; *Fernald v. First Church of Christ,* 77 N.H. 108, 88 A. 705; *Rosenbaum v. Garrett,* 57 N. J. Eq. 186, 41 A. 252; Beale: The Conflict of Laws, section 102-2. This is so even though the trustee (*Smith v. Central Trust Co.,* 154 N.Y. 333, 48 N.E. 553; *Lozier v. Lozier,* 99 Ohio St. 254, 124 N.E. 167), or the beneficiary is a resident of another state. *Merritt v. Corties,* 24 N.Y.S. 561.

The will of Pattie T. Johnson does not manifest any intention that the trust created thereby should be administered outside of North Carolina, where the testatrix was domiciled at the time of her death. When this will of a resident of North Carolina was admitted to probate in North Carolina, it became a North Carolina instrument, creating a North Carolina trust, to be administered according to North Carolina law.

It cannot be gainsaid that the language of item thirteen was sufficient in form to vest in E. V. Johnson as testamentary trustee an unrestricted power to sell the trust property. This being true, he had lawful authority under the will to sell the shares of stock in suit to the defendant, for it is established in this jurisdiction that a trustee can properly sell trust property if a power of sale is conferred upon him by the instrument creating the trust. *Ripley v. Armstrong,* 159 N.C. 158, 74 S.E. 961.

Since the sale was authorized by the will creating the trust, its validity was not impaired in any degree by the fact that the trustee professed to make it under the authority of the decree of the District Court of Brown

County, Texas, even if it be taken for granted that such decree was void because the District Court had no jurisdiction under Texas law to render it. The rule governing this aspect of the case was rightly applied by the Maryland Court of Appeals in *Preston v. Safe Deposit and Trust Company,* 116 Md. 211, 81 A. 523, Ann. Cas. 1913 C, 975, and is accurately stated in this headnote to that decision: "Where one having various capacities executes a delegated authority in one of them, the law will attribute the act to the proper authority, though he does not profess to exercise that authority in doing the particular act, so that the fact that a testamentary trustee sold the trust property under a decree of court based upon statutory authority, which was erroneous because the statute did not authorize sales made in the future as it appeared advantageous, did not prevent the trustee from making good title, where he in fact had an implied power of sale under the will, but did not purport to act thereunder."

These conclusions necessitate an affirmance of the judgment. Nevertheless, we deem it not amiss to make certain observations concerning the contention of the plaintiffs that the decree of the District Court was void.

The plaintiffs advance these arguments to support their position in this respect: (1) That E. V. Johnson was merely the guardian of the estates of the plaintiffs, Ernest Victor Johnson, Jr., and Pattie Ruth Johnson Faulkner, under appointment of the County Court of Brown County, Texas; (2) that the decree of the District Court of Brown County, Texas, was entered in a suit instituted in such court by E. V. Johnson as guardian to sell the property of his wards; and (3) that the District Court had no power to render its decree because Texas law confers exclusive original jurisdiction of suits by guardians to sell the property of their wards upon county courts.

It has been pointed out that E. V. Johnson took title to the shares of stock of the Carolina Telephone and Telegraph Company as trustee under the will of Pattie T. Johnson. The facts that the Administrator with the will annexed deposited the certificates representing such stock with the Clerk of the Superior Court of Halifax County instead of mailing them to E. V. Johnson, and that such Clerk required E. V. Johnson to qualify as guardian of the estates of his two minor children in Texas as a condition precedent to obtaining such certificates did not alter the expressed intention of the testatrix, or deprive E. V. Johnson of his character and powers as trustee under the will. Subsequent to the removal of the stock certificates to Texas, E. V. Johnson professed to manage the stock as trustee under the will, and the District Court of Brown County, Texas, adjudged that he held it in that capacity. In the light of these circumstances, the assertion of the plaintiffs that E. V. Johnson handled the stock as a mere guardian is clearly insupportable.

. The second and third arguments of the plaintiffs on this aspect of the litigation are equally as untenable. The decree under consideration was rendered by the District Court sitting as a court of equity in a suit to terminate the trust and divide the trust property among the beneficiaries. It was well devised to effect those purposes. See in this connection: 54 Am. Jur., Trusts, section 78.

The statute codified as G.S. 8-4 prescribes that "when any question shall arise as to the law of the United States, or of any other state or territory of the United States, or of the District of Columbia, or of any foreign country, the court shall take notice of such law in the same manner as if the question arose under the law of this State." In consequence of this enactment, we judicially know that the District Court of Brown County, Texas, is a court of general jurisdiction and that it has power under Article V, Section 8, of the Constitution of Texas and the statutes embodied in Chapter 3 of Title 40 of Vernon's Texas Statutes to entertain and determine a suit to terminate a trust and divide the trust property among the beneficiaries of the trust.

The trustee and the beneficiaries of the trust created by the will of Pattie T. Johnson resided in Texas, and were parties to the suit in the District Court of Brown County. Since equity acts *in personam,* the decree terminating the trust and directing E. V. Johnson to partition the trust property among the beneficiaries in kind or by sale was binding upon all parties in interest. 15 C.J., Courts, sections 129, 130; 30 C.J.S., Equity, section 81; 65 C.J., Trusts, sections 790, 939. Hence, the sale of the stock was authorized by the decree as well as by the will.

The judgment sustaining the demurrer must be

Affirmed.