139 S.E.2d 214 (1964)
263 N.C. 189
FIRST UNION NATIONAL BANK OF NORTH CAROLINA and J. E. Broyhill, Trustees under the Will of T. H. Broyhill, Deceased,
v.
R. T. BROYHILL et al., and all other persons whose names are unknown, in being or who may be in being, including unborn grandchildren of T. H. Broyhill, deceased, who have or may have any interest in the estate of T. H. Broyhill, deceased.
No. 316.
Supreme Court of North Carolina.
December 16, 1964.
*216 Kennedy, Covington, Lobdell & Hickman, Clarence W. Walker, Charlotte, and Marshall E. Cline, Lenoir, for plaintiffs.
Fate J. Beal, Lenoir, for defendants Mary Caroline Blackwelder and Barbara Ann Blackwelder.
W. T. Carpenter, Jr., Lenoir, guardian ad litem.
MOORE, Justice.
This will confers upon the trustees no express power of sale. This the plaintiffs concede. The question is whether such power is conferred by implication.
Applicable principles are succinctly stated in Hall v. Wardwell, 228 N.C. 562, 46 S.E.2d 556, as follows:
"In the absence of authority conferred by the will, * * * a trustee under a testamentary trust has no authority to convey the fee in the land devised. But the power to convey need not be expressly conferred. It may be implied from the context of the will. 54 A.J. 349. It is purely a question of testamentary intent. Tippett v. Tippett, 24 Del.Ch. 115, 7 A.2d 612; 3 Bogert, Trusts and Trustees, pt. 2,558.
"The implication may result from language necessarily requiring the exercise of the power, from the statement of purposes, or the conferring of other powers or duties to which the power of sale is essential. 54 A.J. 349."
Trustees assert that power of sale is implied in the instant case from the purposes of the trusts and the duties imposed on them as trustees, and they call attention to the following facts and the inferences they draw therefrom. Testator knew that a large part of the real estate produced no income. He bequeathed to his children, the primary objects of his bounty, income from the trust estate. He intended that property producing no income be sold and invested to the end that his children enjoy maximum income benefits. Authority is conferred to invade the corpus of the trust to meet the unanticipated needs of the children if income proves insufficient; this presupposes liquid assets readily available for distribution. There is only a small amount of cash, and less than half of the trust estate consists of stocks. At testator's death his youngest child was 43 years of age, his youngest grandchild 10. He knew that distributions of the trust assets must of necessity soon be made to the grandchildren. These assets will be distributed to twelve or more persons; each person might receive distributions at four different times under the terms of the trust; and distributions to the different beneficiaries will be made at different times because of the difference in their ages. Division and distribution of the land in kind is impractical. Sales pursuant *217 to judicial proceedings are expensive, slow and difficult.
If the trustees had power of sale, to be exercised in accordance with their discretion, the administration of the trust would unquestionably be easier. But the matters of ease and simplicity of administration are not controlling on this appeal. Nor is our problem whether the real estate, or any portions thereof, may be sold. Courts of equity have general, inherent, exclusive supervisory jurisdiction over trusts and the administration thereof, and may authorize whatever is necessary to be done, including sales of land, to preserve a trust, effectuate its purposes and protect the interests of the beneficiaries. First-Citizens Bank & Trust Co. v. Rasberry, 226 N.C. 586, 39 S.E.2d 601.
The question for determination is: Did testator intend to confer upon the trustees power of sale? "The intention of the testator as gathered from the entire instrument is the primary object in interpreting a will, and must be given effect unless contrary to some rule of law or at variance with public policy * * *." 4 Strong: N.C. Index, Wills s. 27, pp. 502-3, and cases cited therein.
From the inventory of the trust estate it is obvious that testator was successful in business and had wide experience in matters of property and investments. It is quite apparent that his will was drafted by a competent and skilled attorney. Testator was not inadvertent to the value and use of powers of sale. In Item V of the will he authorized and empowered the executors to sell the Mayview Manor property and gave explicit directions. Item IX conferred upon the executors the power "to sell all or any part of any property * *, including real estate, at public or private sale for cash or on credit and on such terms and conditions as may seem expedient to them," for specified purposes. Yet, he conferred upon the trustees no power of sale, but provided that the trustees "divide said assets equally among the four shares in kind as well as in value." Power to invade the corpus is strictly limited. There is no direction that the trustees invest and reinvest the assets of the trust estate as was the case in Hall v. Wardwell, supra; Wachovia Bank & Trust Co. v. Edwards, 193 N.C. 118, 136 S.E. 342; Powell v. Woodcock, 149 N.C. 235, 62 S.E. 1071; Foil v. Newsome, 138 N.C. 115, 50 S.E. 597. The trustees are not given broad discretion with respect to the purposes of the trust and the invasion of the corpus as in Hall v. Wardwell, supra; Dillon v. Monroe Cotton Mills, 187 N.C. 812, 123 S.E. 89; Ripley v. Armstrong, 159 N.C. 158, 74 S.E. 961. The instant case is more nearly in accord with Morris v. Morris, 246 N.C. 314, 98 S.E.2d 298; Brinn v. Brinn, 213 N.C. 282, 195 S.E. 793; Jarrell v. Dyer, 170 N.C. 177, 86 S.E. 1031; Crudup v. Holding, 118 N.C. 222, 24 S.E. 7. In our opinion no power of sale was conferred, expressly or by implication, upon the trustees by the will of T. H. Broyhill.
Affirmed.